UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOP AGENT NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL ASSOCIATION OF REALTORS, et al., <br><br> Defendants. | Case No. 20-cv-03198-VC <br><br> **ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION** |

Top Agent Network's motion for a preliminary injunction is denied. It has not raised serious questions on the merits of its claims, much less a likelihood of success. Moreover, Top Agent Network delayed in pursuing its rights, calling into question its assertion of irreparable harm and weakening its argument that the balance of equities tips in its favor. And for reasons explained over the course of this order, an injunction would not serve the public interest.

1. Top Agent Network is unlikely to succeed in arguing that the National Association of Realtors policy amounts to a group boycott or that it otherwise has significant anticompetitive effects. According to the policy, brokers who join a NAR-affiliated listing service must post properties that they have marketed elsewhere onto the NAR database within one day. Because Top Agent Network operates separate databases of properties that are available only to select buyers and sellers, its members are understandably resistant to the policy. But that does not mean that NAR has "boycotted" these agents: members of Top Agent Network are free to join any NAR listing service and enjoy its benefits, and they are free to withdraw if they do not like the policies. Antitrust law does not give them a right to benefit from the contributions of fellow

NAR members while withholding listings of their own. *See Hahn v. Oregon Physicians' Service*, 868 F.2d 1022, 1030 (9th Cir. 1988).

Antitrust law distinguishes between "restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ohio v. American Express, Co.*, 138 S. Ct. 2274, 2284 (2018). Top Agent Network's theories for how the policy hurts buyers and sellers are dubious. It is far more likely that the policy benefits buyers and sellers by increasing access to information about the housing market, thus increasing market efficiency and stimulating competition.[1]

2. Top Agent Network is also unlikely to succeed on its state law claims for tortious interference with contract. As explained above, the policy operates to prevent agents from benefitting from the contributions of fellow NAR members while withholding listings of their own. NAR has taken action against exploitation of its own service, but the tortious interference claims will require Top Agent Network to establish that NAR instead took "intentional acts designed to induce a breach or disruption of the contractual relationship" between Top Agent Network and its members. *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 995–96 (9th Cir. 2019). Top Agent Network may prefer that its members be able to use the NAR service for private gain without contributing in kind—but it cannot create a right to use the service in that way. Top Agent Network may have good reasons for preferring to conduct business through more selective networks, but the policy does not prevent them from doing so. Thus, Top Agent Network is unlikely to be able to establish that the policy was intentionally directed at the disruption of its contractual relationships. And even if it could, NAR has a strong defense that its interest in preventing exploitation of its service outweighs Top Agent Network's interest in preserving an avenue for that exploitation. *See id.* at 997–98.

3. Finally, Top Agent Network waited six months before suing to enjoin the enforcement

---

[1] Top Agent Network also asserts a claim for monopolization under section 2 of Sherman Act. It contends that NAR possesses monopoly power and that it is willfully maintaining that power, but it has offered almost no legal or factual analysis to support these conclusions. It thus has failed to make a showing that there are at least serious questions as to the merits of this claim.

of the policy, undermining its contention that a preliminary injunction is warranted. Top Agent Network complained to NAR about the policy when it was adopted in November of 2019, making many of the same arguments that it raises before the Court. *See* Glass Decl., Exhibit 1, Dkt. No. 17-8, at 2–4. NAR announced at the time of adoption that the policy would go into effect in January of 2020, but Top Agent Network did not file this lawsuit until May of 2020.

**IT IS SO ORDERED.**

Dated: July 16, 2020

_____
VINCE CHHABRIA
United States District Judge