UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOP AGENT NETWORK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>    Defendants. | Case No. 20-cv-03198-VC<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 66 |

The motion to dismiss is granted. Assuming that TAN has correctly defined the relevant market, it has not stated a claim for violation of the antitrust laws. There are several, related issues with the complaint:

1. The defendants in this case—NAR and its local affiliate SFAR—are associations that consist of many individual members. An association whose mission is to enable a more efficient market by serving the interests of many different people must have a certain amount of room to impose reasonable ground rules that prevent a minority of members from benefitting at the undue expense of the majority. *See Northwest Wholesale Stationers v. Pacific Stationary*, 472 U.S. 284, 296 (1985). The antitrust analysis set forth in the current complaint does not account for this reality. Instead, the complaint treats NAR as if it is a singular corporation with the singular interest in profiting from the product it is selling. Thus, the complaint's analysis of NAR's policy, which is plausibly designed to prevent a minority of member agents from selectively withholding listings to the detriment of the entire group (not to mention consumers), is artificial.

2. TAN has not adequately countered NAR's plausible assertion (incorporated into the complaint by reference to NAR's statement in support of the policy) that the policy has

procompetitive effects because it causes more listings to be available to more agents (and thus to more prospective buyers). *Hahn v. Oregon Physicians' Service,* 868 F.2d 1022, 1030 (9th Cir. 1988); *see also The PLS.com LLC v. The National Association of Realtors*, 2021 WL 369545, at *11 (C.D. Cal. 2021). Although TAN plausibly speculates that some listings would shift toward office exclusives at brokerages, it does not allege with sufficient specificity and plausibility that this will be the sole or primary effect of the policy.

3. The complaint assumes that the policy will prevent competing listing services (such as TAN and another competitor, The PLS.com) from operating. But it does not adequately explain why this would be so. TAN's theory is that too many seller's agents are effectively chained to the MLS and cannot afford to exclusively list some properties on a private service if doing so means they can no longer use the MLS. But the complaint does not adequately describe the market power possessed by NAR and its affiliates—indeed it omits many basic facts that could help the reader assess the market power of the defendants relative to TAN's own place in the market (or The PLS.com's place in the market). For example, at the hearing on the present motion, counsel for TAN revealed for the first time the number of current TAN members operating in San Francisco (but still did not identify what percentage of TAN members are also NAR members or subscribers). Nor does the complaint adequately explain why a subset of real estate agents—particularly highly successful ones as TAN advertises its subscribers to be— would be unable to succeed in their profession by participating in agent networks that use exclusive listings while foregoing use of the MLS.

4. It is not necessarily the case that what is harmful to TAN is harmful to the market for listing services or, ultimately, the market for homes. TAN's theory of a group boycott is that it is being cut off from the supply of real estate listings. But in truth, the only thing the NAR policy prevents its members from doing is placing listings *exclusively* on TAN. And although the opportunity to post and view exclusive listings may be part of how TAN convinces agents to pay its subscription fee, TAN has not plausibly alleged that having a number of separate, smaller listing services, each offering its own set of exclusive listings and commanding its own

subscription fee, would benefit the ultimate consumers in the market for homes. *Cf. Freeman v. San Diego Association of Realtors*, 322 F.3d 1133, 1140-41 (9th Cir. 2003) (describing the procompetitive effects of consolidating listing services).

5. Indeed, nowhere in the complaint does TAN allege that anyone will pay more for anything as a result of the policy. It does not allege that agents will pay more for subscriptions to listing services. And it does not allege that people will pay more for real estate. *Compare Freeman*, 322 F.3d at 1145. TAN's theory of antitrust harm rests entirely on assertions that the policy reduces consumer choice to some degree. But as discussed in the preceding paragraphs, the extent to which consumer choice is restricted is speculative, it's unclear how meaningful any such restriction is to people who wish to buy or sell properties, and the purported restrictions appear (at least given the information provided by the plaintiffs) to serve the legitimate purpose of making more listings available to more agents and consumers.

\* \* \*

Considering these shortcomings in combination, TAN has failed to allege an antitrust violation. It may well be reasonable at this point to dismiss the complaint with prejudice—TAN has already had multiple opportunities to set forth its antitrust theory. But because the Court has not yet reached the point of concluding definitively that amendment would be futile, TAN will get one final chance to amend. The final amended complaint is due within 21 days of this order, and a response from the defendants is due 14 days thereafter.

**IT IS SO ORDERED.**

Dated: April 27, 2021

VINCE CHHABRIA
United States District Judge