LEWIS & LLEWELLYN LLP
Paul T. Llewellyn (Bar No. 216887)
pllewellyn@lewisllewellyn.com
Tobias G. Snyder (Bar No. 289095)
tsnyder@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

Attorneys for Plaintiff
TOP AGENT NETWORK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| TOP AGENT NETWORK, INC., | Case No. 3:20-CV-03198 VC |
|---|---|
| Plaintiff, | **PLAINTIFF TOP AGENT NETWORK, INC.'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| NATIONAL ASSOCIATION OF REALTORS; SAN FRANCISCO ASSOCIATION OF REALTORS, | |
| Defendants. | Date: July 18, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria |
| | Complaint Filed: May 11, 2020 |

# TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I. | INTRODUCTION. | 5 |
| II. | RELEVANT FACTS. | 6 |
| III. | LEGAL STANDARD. | 7 |
| IV. | ARGUMENT. | 7 |
| | A. The PLS.com and TAN Alleged Substantially Identical Legal Theories Against NAR, Supported by Substantially the Same Material Facts, and *PLS.com* Speaks Directly to the Legal Issues in this Case. | 7 |
| | B. The District Court's Grounds for Dismissing the TAC with Prejudice—that TAN's Use of Membership Eligibility Criteria Prevents it from Alleging Antitrust Injury—is Incompatible with *PLS.com* and Inconsistent with Ninth Circuit Law. | 11 |
| |    1. The Dismissal Order is Incompatible with *PLS.com*. | 12 |
| |    2. The Court's Conclusion that TAN Cannot Establish Antitrust Injury Because it is "Anticompetitive" is Not Consistent with Ninth Circuit Law. | 14 |
| V. | CONCLUSION. | 17 |

# TABLE OF AUTHORITIES

**CASES**

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ................................................................................................ 16

*Fashion Originators' Guild v. FTC*,
    312 U.S. 457 (1941) ................................................................................................ 16

*Flaa v. Hollywood Foreign Press Ass'n*,
    55 F.4th 680 (9th Cir. 2022) ........................................................................ 14, 15, 16

*Hahn v. Or. Physicians' Serv.*,
    868 F.2d 1022 (9th Cir. 1988) ................................................................................ 10

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*,
    340 U.S. 211 (1951) ................................................................................................ 16

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
    359 U.S. 207 (1959) .................................................................................................. 9

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ................................................................................................ 14

*PLS.com v. Nat'l Ass'n of Realtors*,
    32 F.4th 824 (9th Cir. 2022) .................................................. 4, 5, 8, 9, 10, 11, 12, 13, 14

*Pool Water Products v. Olin Corporation*,
    258 F.3d 1024 (9th Cir. 2001) ................................................................................ 10

*Sch. Dist. No. 1J v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir.1993) ....................................................................................... 7

*Top Agent Network, Inc. v. Nat'l Ass'n of Realtors*,
    2023 WL 5526711 (9th Cir. Aug. 28, 2023) ......................................................... 5, 7

Page(s)

TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:

PLEASE TAKE NOTICE that on July 18, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-titled court, Plaintiff Top Agent Network, Inc. ("TAN") will and hereby does move the Court, pursuant to the Court's April 19, 2024 order (ECF No. 110), for reconsideration of its vacated August 16, 2021 order dismissing with prejudice TAN's Third Amended Complaint (the "Dismissal Order"). This motion is based on the ground that applying the Ninth Circuit's decision in the analogous matter *PLS.com v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832–41 (9th Cir. 2022), cert. denied, 143 S. Ct. 567 (2023) requires that the Court deny Defendants National Association of Realtors' and San Francisco Association of Realtors' motion to dismiss the Third Amended Complaint.

This motion is made and based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support thereof; (3) the Declaration of Tobias G. Snyder filed herewith; (4) the pleadings and motions on file in this action; and (5) such other argument and/or evidence that is presented at the time of the hearing in this matter.

Respectfully submitted,

Dated: May 9, 2024                LEWIS & LLEWELLYN LLP

By: /s/ Tobias G. Snyder
    Paul T. Llewellyn
    Tobias G. Snyder
    Attorneys for Plaintiff
    TOP AGENT NETWORK, INC.

## I. INTRODUCTION.

Pursuant to this Court's April 18, 2024 order (ECF No. 110), Plaintiff Top Agent Network, Inc. ("TAN" or "Plaintiff") brings this motion for reconsideration of the Court's December 16, 2021 order granting Defendants National Association of Realtors' ("NAR") and San Francisco Association of Realtors' (collectively with NAR, "Defendants") motion to dismiss TAN's Third Amended Complaint with prejudice (the "Dismissal Order"). (ECF No. 92.) The Court's April 18, 2024 order follows from TAN's appeal of the Dismissal Order, in response to which the Ninth Circuit vacated the Dismissal Order and remanded this matter to the District Court to reconsider its order in light of the Ninth Circuit's opinion in *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 829 (9th Cir. 2022) ("*PLS.com*"). *See Top Agent Network, Inc. v. Nat'l Ass'n of Realtors*, No. 21-16494, 2023 WL 5526711, at *1 (9th Cir. Aug. 28, 2023).

For the reasons stated below, the Dismissal Order cannot be reconciled with *PLS.com*. Because the factual allegations and legal theories in *PLS.com* and this case are substantially the same, *PLS.com* reached a large number of findings directly related to this dispute, including that the relevant market in this matter is the market for real estate listings services; that TAN's allegations sufficiently articulate that the challenged Policy is a *per se* group boycott injuring competition in that market; that NAR's purported procompetitive justification for the Policy is not valid and cannot defeat this *per se* claim; and that TAN's allegations are sufficient to establish antitrust injury. All of these findings, and others discussed below, must guide the Court's analysis on reconsideration.

Further, *PLS.com* makes clear that the Court's conclusion in the Dismissal Order that TAN inherently lacks the ability to allege standing against NAR because its business model is purportedly anticompetitive cannot factor into the Court's analysis of TAN's claims, as it requires factual findings unavailable at the pleading stage and is inconsistent with the Ninth Circuit's approach to anitrust injury analysis. In addition, this finding by the Court was inconsistent with Ninth Circuit caselaw holding that a business's use of membership eligibility criteria is not anticompetitive and, even if it were, it would not impact that business's ability to bring a Sherman Act claim against another party.

For all these reasons, on reconsideration the Court should deny NAR's motion to dismiss, consistent with the holding in *PLS.com*.

## II.	RELEVANT FACTS.

This case involves allegations by TAN that NAR, which exerts broad nationwide control over real estate agents and property listing services, promulgated a mandatory restrictive policy (the "Policy") for its member-agents that effectively required them to use NAR's listing services exclusively. TAN, a competitor of NAR's, alleges that this agreement restricted competition in the market for real estate listing services in violation of the antitrust laws and caused resulting injury to TAN. TAN sued NAR on that basis. (*See* ECF No. 1.)

On December 16, 2021, the Court issued an order granting NAR's motion to dismiss TAN's Third Amended Complaint (the "TAC") with prejudice. (ECF No. 92.[1]) The Dismissal Order did not reach a conclusion regarding whether TAN had adequately alleged antitrust violations by NAR, though it did acknowledge that TAN "lays out a reasonable argument that the Policy is so broad that its overall effect on the market for homes is anticompetitive"; that "[t]he Policy leverages NAR's control of the real estate market to coerce most agents into giving up their off-MLS activities entirely, without regard to the competitive value of those activities"; that TAN "alleges with particularity" that there is a legitimate market demand for TAN's services; that TAN "plausibly alleges that the Policy, by forcing . . . consumers to choose between the MLS and a problematic in-house transaction at a large brokerage, reduces consumer choice and stymies competition among agents for off-MLS sales"; and that these allegations would seem to be sufficient to allege harm to competition and a violation of Sherman Act Section 1. (Dismissal Order, ECF No. 92 at 10-11.)

However, the Court ruled that regardless, TAN's use of eligibility criteria to screen potential customers was so inherently "anticompetitive" that its business model precluded it from establishing antitrust injury and suing NAR on the Policy. (Dismissal Order, ECF No. 92 at 14.) TAN appealed the Dismissal Order to the Ninth Circuit. (ECF No. 94.)

---

[1] For the convenience of the Court, Plaintiff has attached legal decisions and docket entries discussed in this brief as exhibits to the Declaration of Tobias G. Snyder ("Snyder Declaration") filed herewith. The Court's Dismissal Order is attached to the Snyder Declaration as Exhibit A.

Parallel to this litigation, on May 28, 2020 another property listing service, The PLS.com, LLC, filed a separate lawsuit against NAR in the Central District of California. This lawsuit also challenged the Policy, ultimately asserting the exact same theory of antitrust liability as TAN based on the same material facts.[2] The PLS.com's action was also dismissed with prejudice and the plaintiff appealed to the Ninth Circuit on February 23, 2021.

On April 26, 2022, subsequent to the Dismissal Order, the Ninth Circuit issued its ruling on The PLS.com's appeal, *PLS.com*. The opinion vacated and reversed the Central District's dismissal order, finding that The PLS.Com had adequately alleged a *per se* group boycott and had standing to bring that claim against NAR.

On August 28, 2023, the Ninth Circuit issued its ruling on TAN's appeal. Referring specifically to *PLS.com*, the Ninth Circuit commented that it had "considered the sufficiency of similar allegations," holding that "[b]ecause the facts of *PLS.com* are sufficiently analogous to the facts as alleged here, we vacate the district court's order and remand Top Agent's claims for reconsideration under *PLS.com*." *Top Agent Network, Inc. v. Nat'l Ass'n of Realtors*, No. 21-16494, 2023 WL 5526711, at *1 (9th Cir. Aug. 28, 2023) ("*Top Agent*").[3]

## III. LEGAL STANDARD.

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994).

## IV. ARGUMENT.

**A.  The PLS.com and TAN Alleged Substantially Identical Legal Theories Against NAR, Supported by Substantially the Same Material Facts, and *PLS.com* Speaks Directly to the Legal Issues in this Case.**

Both TAN and The PLS.com allege that they are sellers in the market for property listing

---

[2] The TAC is attached as Exhibit B to the Snyder Declaration. The PLS.com's First Amended Complaint is attached as Exhibit C to the Snyder Declaration.

[3] *PLS.com* is attached hereto as Exhibit D to the Snyder Declaration. *Top Agent* is attached hereto as Exhibit E to the Snyder Declaration.

7
PLAINTIFF'S ADMINISTRATIVE MOTION TO RESCHEDULE HEARING DATE
CASE NO. 3:20-CV-03198 VC

services, targeting real estate agents who seek to view and share property listing that sellers do not wish to market on NAR-owned MLSs, at least initially. (PLS Compl. ¶¶ 7-8, 50-68; TAC ¶¶ 59-78.) Both allege that NAR is a membership organization among individual real estate agents that compete with one other. (PLS Compl. ¶ 103; TAC ¶ 97)

Both TAN and The PLS.com allege that the Policy represents an agreement among NAR, its affiliates, and its member agents to restrict the manner in which these agents may compete. (PLS Compl. ¶ 104; TAC ¶¶ 96-97.) Both allege that the Policy does so by coercing agents not to list properties on competing listing services, as agents must quickly list the same properties on the MLS or risk substantial fines and/or losing access to the MLS entirely. (PLS Compl. ¶¶ 106-108; TAC ¶¶ 152-154.) Both allege that this restriction on competition was intended to eliminate upstart competitors from the market for property listing services and drive all business to NAR. (PLS Compl. ¶ 105; TAC ¶¶ 98-99.)

Both TAN and The PLS.com allege that there is no plausible procompetitive justification for the Policy, because the "office exclusive" exception shows that NAR's purported justification is mere pretext, and that NAR does not mind exclusive off-MLS listings if they are shared in a forum that does not compete with NAR. (PLS Compl. ¶ 116; TAC ¶¶ 103-108.) Both allege that the Policy has injured competition in the market for property listing services sold to real estate professionals, and that this injury has harmed TAN/PLS.com by restricting their supply of property listings and available customers. (PLS Compl. ¶ 113; TAC ¶¶ 143-144, 167.)

Given that TAN and The PLS.com alleged near-identical legal claims, the Ninth Circuit in *PLS.com* addressed multiple legal issues that have been raised here before the District Court, all of which should inform the Court's analysis on reconsideration, including in particular:

- That the relevant market for TAN's antitrust claims is the market for real estate listing services, and TAN need not show harm to home-buyers or home-sellers to allege antitrust injury. *PLS.com* at 832-833.
- Allegations that the Policy leverages NAR's power over agents to restrict competition, and that it coerces agents away from listing services that compete with NAR's MLSs, meet the criteria to allege a *per se* group boycott in violation of the

Sherman Act, and it was error to dismiss The PLS.com's *per se* claim. *PLS.com* at 833-835 ("The Clear Cooperation Policy, as PLS characterizes it, shares all the hallmarks of a group boycott").

- NAR's arguments that the Policy "does not cut off access to anything" and "on its face" does not prevent agents from posting to alternative services (see NAR MTD TAC (ECF No. 81) at 4-6)[4] are unpersuasive and cannot defeat a *prima facie* showing of a *per se* restraint; a group boycott may exist where the defendant does not fully cut off an input, but forces a competitor to acquire it on unfavorable terms. *PLS.com* at 835-836, *citing Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 209 (1959).

- NAR's argument that the Policy is procompetitive because it directs all listings to the MLS is unpersuasive and cannot defeat a *prima facie* showing of a *per se* restraint, because an argument that the challenged restraint improves the defendant's own service is not a valid procompetitive justification—the defendant must articulate a benefit to competition, not just itself. *PLS.com* at 836–837.

- The District Court need not determine at the pleading stage whether a *per se* or Rule of Reason analysis will be used to analyze liability. *PLS.com* at 837.

- The Sherman Act "prohibits group boycotts because they are designed to drive existing competitors out of the market or to prevent new competitors from entering, thus leaving consumers with fewer choices, higher prices, and lower-quality products"; The PLS.com "adequately alleged antitrust injury" by alleging that "the Clear Cooperation Policy prevented PLS from gaining a foothold in the market and makes it virtually impossible for new competitors to enter, leaving agents with fewer choices, supra-competitive prices, and lower quality products." *PLS.com* at 840.

- Alleging harm to a competitor does not preclude alleging harm to competition, because "sometimes harm to a competitor also harms competition which, in turn,

---

[4] NAR's motion to dismiss TAN's Third Amended Complaint is attached to the Snyder Declaration as Exhibit F.

harms consumers." *PLS.com* at 832.

- NAR's "out-of-context" citations to *Pool Water Products v. Olin Corporation*, 258 F.3d 1024 (9th Cir. 2001) misconstrue the holding in that case, which "simply reiterated what the Supreme Court had already made clear: injuries due to lower prices are not antitrust injuries unless those lower prices are predatory." *PLS.com* at 840.

Further, while not stated explicitly, the Ninth Circuit's analysis of liability and antitrust injury was consistent with TAN's position regarding how to approach NAR's alleged procompetitive justifications. TAN argues that under *Hahn v. Or. Physicians' Serv.*, 868 F.2d 1022 (9th Cir. 1988), if the plaintiff alleges a *prima facie* agreement in restraint of trade that would otherwise trigger *per se* liability, a defendant may put forward plausible procompetitive justifications for the restraint, necessitating a more thorough fact-based analysis of the claim under the Rule of Reason test. (*See* TAN Opp. to MTD TAC at 9-10.)[5] TAN has argued that even if the Court correctly did not dismiss TAN's *per se* claim, it could still determine later in the case that applying the Rule of Reason was appropriate. (*Id*. at 10.) TAN has also argued that antitrust injury analysis focuses on whether the mechanism of injury alleged by the plaintiff is consistent with the types of injuries redressable through the antitrust laws, and—aside from the necessity to allege liability—does not involve the defendant's alleged procompetitive justifications or the nature of the plaintiff. What matters is whether the harm flowed from an injury to competition and not something else.

The Ninth Circuit's analysis took this approach. *PLS.com*'s discussion of NAR's alleged procompetitive justification (i.e., to push all listings to the MLS) takes place entirely in the opinion's analysis of whether The PLS.com sufficiently alleged a *prima facie* group boycott, justifying application of the *per se* test. *PLS.com* at 833. In that context, *PLS.com* found that NAR's purported procompetitive justification for the Policy (forcing all listings to the MLS) was not sufficient to overcome the plaintiff's initial showing and justify dismissal of the *per se* claim.

---

[5] TAN's opposition to NAR's motion to dismiss the Third Amended Complaint is attached to the Snyder Declaration as Exhibit G.

*PLS.com* at 836-837. NAR's procompetitive justifications are not mentioned again until *PLS.com's* discussion of the plaintiff's market definition, an element of a Rule of Reason analysis, with the opinion stating: "whether the alleged procompetitive benefits of the Clear Cooperation Policy outweigh its alleged anticompetitive effects is a factual question that the district court cannot resolve on the pleadings." *PLS.com* at 840.

Additionally, *PLS.com's* discussion of antitrust injury does not mention NAR's purported procompetitive justifications at all, or the plaintiff's potential effects on the market. Rather, in finding that the antitrust injury requirement was met, *PLS.com* simply noted that the Sherman Act prohibits group boycotts because they "drive existing competitors out of the market or . . . prevent new competitors from entering, thus leaving consumers with fewer choices, higher prices, and lower-quality products," and found that "PLS alleges that is what happened here: the Clear Cooperation Policy prevented PLS from gaining a foothold in the market and makes it virtually impossible for new competitors to enter, leaving agents with fewer choices, supra-competitive prices, and lower quality products." *PLS.com* at 840. NAR's purported justifications played no role in the analysis.

The allegations that *PLS.com* relied on to reach the findings above are all mirrored in the TAC—if anything, TAN alleges NAR's unlawful conduct and the anticompetitive effects of the Policy in far more detail. *PLS.com* thus requires the District Court to reach the same conclusions as the Ninth Circuit in that case: that TAN sufficiently alleged the Policy is a *per se* group boycott that injured competition in a manner that harmed TAN, that none of NAR's purported justifications for the Policy are sufficient to overcome this *prima facie* showing, and that the Court must deny NAR's motion to dismiss the TAC in full.

**B.      The District Court's Grounds for Dismissing the TAC with Prejudice—that TAN's Use of Membership Eligibility Criteria Prevents it from Alleging Antitrust Injury—is Incompatible with *PLS.com* and Inconsistent with Ninth Circuit Law.**

As discussed above, the Dismissal Order, consistent with *PLS.com*, suggested that TAN had adequately alleged that NAR violated Sherman Act Section 1 and that NAR's harm to competition had caused injury to TAN. (*See* Dismissal Order, ECF No. 92 at 10-11.) Such findings should have

ended the inquiry and led the Court to deny NAR's motion to dismiss. Instead, the Court dismissed the TAC, with prejudice, based on the idea that "TAN could never allege an antitrust injury from the Policy, because TAN's business model is itself anticompetitive in a way that the Policy would tend to remedy." (Dismissal Order, ECF No. 92 at 11.) This notion that TAN might inherently lack the ability to show antitrust injury because its "business model is itself anticompetitive" is both incompatible with *PLS.com* and not supported in Ninth Circuit law.

TAN has not had an opportunity to brief this issue before the Court. NAR did not move to dismiss on this ground. Rather, NAR argued that TAN's use of membership eligibility criteria restricted complete access to TAN listings, and thus the Policy's forcing of all listings to the MLS was procompetitive. (*See* NAR MTD, ECF No. 81 at 3-7.) This argument contested TAN's ability to establish net anticompetitive effect, thus precluding liability. This was not an antitrust injury argument; NAR's argument on antitrust injury was that TAN had failed to allege an injury to competition, only to itself. (*Id.* at 8; NAR Reply, ECF No. 83 at 4-6.)[6]

The morning of oral argument on NAR's motion to dismiss, the Court issued an order to the Parties requiring they be prepared to discuss whether TAN's use of membership eligibility criteria might make it particularly unable to establish net anticompetitive impact and thus a violation of the Sherman Act, even if the Policy was broadly anticompetitive. (*See* ECF No. 85.) The order did not mention antitrust injury. The notion that TAN's use of membership eligibility criteria might prevent it from establishing antitrust injury, and that TAN might inherently lack standing and be barred from bringing an antitrust claim regardless of whether it adequately alleged a violation of the Sherman Act that harmed TAN through an injury to competition, did not appear in writing until the Dismissal Order. (*See* Dismissal Order, ECF No. 92 at 10-14.)

### 1. The Dismissal Order is Incompatible with *PLS.com*.

This concept that TAN is inherently unable to allege antitrust injury is incompatible with

---

[6] Both of these arguments were directly rejected in *PLS.com*: the Ninth Circuit held both that NAR's desire to push listings to the MLS was not a valid procompetitive justification (*PLS.com* at 836) and that the Policy's coercion of agents and distortion of that market represented a sufficient harm to competition to support an antitrust claim from a competing listing service injured by this coercion (*Id.* at 840).

*PLS.com* for several reasons. First, *PLS.com* makes clear that "whether the alleged procompetitive benefits of the Clear Cooperation Policy outweigh its alleged anticompetitive effects is a factual question that the district court cannot resolve on the pleadings." *PLS*.com at 840. The Dismissal Order violates this precept, plainly engaging in a factual comparison of TAN's allegations of competitive harm against NAR's assertions of procompetitive benefit. For instance, the Dismissal Order claims that "the relatively small competitive harm represented by the loss of consumers' ability to choose TAN rather than the MLS pales in comparison to the procompetitive benefits of open information." (*See* Dismissal Order, ECF No. 92 at 13-14.) Yet neither party has submitted evidence in this case regarding the scope of any competitive effects, and there is no basis upon which the Court could determine that one effect outweighs the other—which, as *PLS.com* states, would be inappropriate regardless at the pleading stage.

As another example, the Dismissal Order states that "TAN's platform . . . allow[s] [member] agents to use the elite status they gained as a result of NAR's open-access rules to diminish the opportunity of others who seek to achieve similar status through use of the MLS going forward." (*Id*. at 12-13.) As before, there is no evidence admitted in this case suggesting that TAN's presence in the property listing market has "diminish[ed] the opportunity" of any agent or hindered their ability to succeed in their profession. And, as *PLS.com* plainly states, the District Court lacked the authority at the pleading stage to reach this finding—especially when it contradicts the allegations in the TAC that TAN's presence is procompetitive, providing among other things greater options for agents and a more liquid market for their clients. On reconsideration, the District Court cannot rely on these and similar assertions and remain compatible with *PLS.com*.

Second, as discussed above, *PLS.com* makes clear that antitrust injury analysis looks to the alleged mechanism of injury and whether the plaintiff's harm flows from an injury to competition; the defendant's purported procompetitive justifications for the alleged restraint are not relevant to that portion of the analysis. *PLS.com* at 840. The Dismissal Order acknowledges that TAN sufficiently alleged at the pleading stage that the Policy "is anticompetitive" because it "reduces consumer choice and stymies competition among agents for off-MLS sales." (Dismissal Order, ECF No. 92 at 10-11.) The Dismissal Order also acknowledges that this anticompetitive effect on the

market has harmed TAN by causing "the loss of agent members." (*Id*. at 11.) Under *PLS.com*, these alleged facts establish antitrust injury and are sufficient to end the inquiry—TAN alleges NAR's naked restraint distorted the market for property listing services, and that TAN's ongoing injury flows directly from this market distortion. *See PLS.com* at 840.

At a later stage of the case, when the parties have exchanged discovery and collected evidence, the Court will be in a position to consider the various procompetitive and anticompetitive effects the Parties argue flow from the Policy. *See*, e.g., *PLS.com* at 840, *citing Ohio v. Am. Express Co*., 585 U.S. 529, 541 (2018) (distinguishing between anticompetitive and procompetitive effects requires a "fact-specific assessment"); *PLS.com* at 837 (a court may determine whether to apply *per se* or Rule of Reason test after pleading stage). However, the Court acted contrary to the subsequent guidance of *PLS.com* when it reached these premature conclusions regarding the "anticompetitive" nature of TAN's business and allowed these premature conclusions to justify dismissal of TAN's TAC.

### 2. The Court's Conclusion that TAN Cannot Establish Antitrust Injury Because it is "Anticompetitive" is Not Consistent with Ninth Circuit Law.

Not only did the Court act inconsistently with *PLS.com* in adopting disputed facts at the pleading stage and incorporating these disputed facts into its analysis of antitrust injury, the Court also erred in concluding that TAN's use of eligibility criteria for potential customers was anticompetitive and that this affected TAN's ability to bring a claim against NAR.[7]

First, Ninth Circuit caselaw is clear that a business's use of membership eligibility criteria is not an anticompetitive practice. *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680 (9th Cir. 2022) is instructive. In *Flaa*, two entertainment journalists sued the Hollywood Foreign Press Association ("HFPA"), the group that hosts the Golden Globes, after their membership applications were rejected. The plaintiffs alleged that the HFPA's restrictive membership criteria were anticompetitive, given the significant professional advantages of HFPA membership. The Ninth Circuit upheld the lower court's dismissal. *Id*. at 685. In doing so, *Flaa* rejected the notion that

---

[7] Because The PLS.com does not rely on membership criteria, NAR did not raise this argument before the Ninth Circuit in *PLS.com*.

membership eligibility criteria were presumptively anticompetitive, noting that "membership in almost any trade association provides some kind of economic benefit" but that "[i]t does not follow that every trade association must open itself to all comers." *Id*. at 690.

The same facts relied on by the *Flaa* panel to uphold dismissal are present here. As in *Flaa*, there is no indication that TAN has market power sufficient to create anticompetitive effects, and its use of membership criteria is unilateral and not concerted action. *Flaa*, 55 F.4th at 690. As in *Flaa*, there is nothing in the record suggesting that an inability to join TAN cuts any agents off from anything necessary to compete in the industry (*id*. at 689-690)—NAR does not contend that top performing agents *become* top performing agents *because* they purchase membership with TAN, indeed the TAC alleges that off-MLS sales are a minor portion of its members' income (TAC ¶ 43). The *Flaa* court also disregarded the plaintiff's argument that studios provided actor interviews to HFPA members that were not available to other journalists, because the "HFPA does not control access to talent—Hollywood studios do," *Flaa*, 55 F.4th at 690. Likewise, TAN asserts no control over whether an agent and/or their client makes the independent choice not to advertise a property with the MLS or elsewhere.

Finally, as in *Flaa*, TAN has legitimate procompetitive reasons to impose eligibility criteria for membership, alleged in the TAC and ignored by NAR. *Id*. at 691. In *Flaa*, the Ninth Circuit noted that "the HFPA could decide to limit its membership to prevent the organization from becoming unwieldy in size, and it could choose to select members who will add particular viewpoints to the Golden Globe voting pool." *Id*.

Unlike NAR, TAN is not a member-owned association of brokers, but instead a for-profit corporation selling a membership service to real estate agents. NAR seems to imply that TAN is arbitrarily and vindictively excluding potential paying customers from its platform to help others "pull the ladder up behind them," which would be self-defeating and commercially nonsensical. TAN imposes membership criteria because holding a real estate license is not an effective proxy for whether an individual meaningfully practices as a consumer-facing residential agent, and restricting membership to such agents improves the quality of the service TAN is able to market to paid members. As *Flaa* explained:

> While some professional organizations may seek to include everyone practicing in a particular field, others may choose to limit their membership to those that they deem to be among the elite of the profession. . . . Such an organization requires some degree of exclusivity in order to function effectively. Its restrictive admission policy is not inherently anticompetitive, so the organization generally is 'entitled to determine its members and is certainly not required to accept every applicant.'

*Flaa*, 55 F.4th 680 at 691, citing Phillip E. Areeda & Herbert Hovenkamp, 13 Antitrust Law ¶ 2214c, at 341 (4th ed. 2019).

Here, as NAR well knows, the overwhelming majority of real estate license holders are not substantially engaged in marketing residential homes, either because representing consumers in the residential market is not their profession, or because they lack the professional skills to be effective consumer-facing agents—indeed, NAR itself has called the superfluity of ineffective agents "the single largest risk to the real estate industry." (TAC ¶¶ 35-37, 89.) As TAN alleges in the TAC, "TAN's value for its members derives in large part from network effects—the larger the share of top agents in TAN's membership, the greater the value of TAN membership to other top agents." (TAC ¶ 80.) TAN's desire to limit its membership to top-performing, active professionals, improving the value of its service to agents and their customers, is an entirely legitimate purpose.

The Court's factual determination that TAN's business model was inherently anticompetitive is inconsistent with Ninth Circuit law, especially when this conclusion was reached without any consideration for TAN's procompetitive justifications or through the application of standard antitrust principles.

Second, Ninth Circuit law is clear that a plaintiff's own purportedly anticompetitive acts would not prevent it from bringing an antitrust action. "[A] plaintiff's illegal conduct cannot be raised as a complete bar to his antitrust action." *First Beverages, Inc. v. Royal Crown Cola Co.*, 612, F.2d 1164, 1174 (9th Cir. 1980); *see also Fashion Originators' Guild v. FTC*, 312 U.S. 457, 468 (1941) (an antitrust defendant cannot raise as a defense that it engaged in anticompetitive conduct as a response to others' supposedly unethical, immoral, or unlawful conduct); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951), *overruled in irrelevant part, Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (If plaintiffs were "guilty of infractions of the antitrust laws, they could be held responsible in appropriate proceedings brought against them by the Government or by injured private persons").

The antitrust laws are clear: TAN's use of membership eligibility criteria is not an anticompetitive practice, and even if it were this would not impact TAN's ability to allege an antitrust claim against NAR. The District Court's dismissal on this ground was inconsistent with Ninth Circuit law and *PLS.com*.

## V. CONCLUSION.

For the foregoing reasons, on reconsideration Defendants' motion to dismiss the TAC should be denied, and the Court should issue an order confirming that TAN sufficiently alleged a *per se* violation of the Sherman Act and has standing to bring this claim, as well of the other claims alleged in the TAC.

Dated: May 9, 2024               LEWIS & LLEWELLYN LLP

                                 By: */s/ Tobias G. Snyder*
                                     Paul T. Llewellyn
                                     Tobias G. Snyder
                                     Attorneys for Plaintiff
                                     TOP AGENT NETWORK, INC.