UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOP AGENT NETWORK, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL ASSOCIATION OF<br>REALTORS, et al.,<br><br>　　　　　Defendants. | Case No.  20-cv-03198-VC<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 113 |

Top Agent Network's motion for reconsideration is granted. This order assumes the reader's familiarity with the facts and procedural history, the applicable legal standards, and the arguments made by the parties.

Two points from *The PLS.com, LLC v. National Association of Realtors* compel reconsideration. First, *PLS.com* emphasized that "whether the alleged procompetitive benefits of the Clear Cooperation Policy outweigh its alleged anticompetitive effects is a factual question that the district court cannot resolve on the pleadings." 32 F.4th 824, 839 (9th Cir. 2022). Second, and more importantly, *PLS.com* held that the relevant market is not the market for real estate, in which people buy and sell homes, but the market for real estate listing services, in which real estate agents subscribe to listing platforms and post listings to those platforms. That's the market in which the National Association of Realtors and its affiliate associations and MLSs compete with other listing service providers like Top Agent Network. *Id.* at 832–33, 839.

Top Agent Network has adequately alleged that the Policy constitutes a per se group boycott in violation of the Sherman Act. In considering whether the plaintiff in *PLS.com* had

done so, the Ninth Circuit noted that "PLS's competitors coerced its suppliers (sellers' agents) not to supply PLS with listings (or to do so only on highly unfavorable terms), and they did so for the express purpose of preventing PLS, a new entrant to the market after decades of little to no competition, from competing with the MLSs. . . . PLS also alleges that the effort succeeded." *Id.* at 834-35. Substituting "Top Agent Network" for "PLS," the same is true here.

Top Agent Network has also adequately alleged antitrust injury. Its asserted injury stems from the Policy's allegedly anticompetitive effects on the market for real estate listing services: by forcing Top Agent Network and other listing services to compete with the MLSs for listings on unfavorable terms, the Policy prevents Top Agent Network from "gaining a foothold in the market and makes it virtually impossible for new competitors to enter, leaving agents with fewer choices, supra-competitive prices, and lower quality products." *Id.* at 840.

The dismissal order held otherwise based on the view that the Policy, as applied to Top Agent Network's exclusive listing service, actually increased competition. But that was looking to effects on the ultimate real estate market, not on the upstream market for real estate listing services. Looking to that upstream market, the complaint adequately alleges that Top Agent Network's injury flows from the Policy's anticompetitive effects: The Policy harms competition by impeding agents' ability to choose to post listings to Top Agent Network's listing service, and this in turn harms Top Agent Network by restricting its supply of listings. And the Policy does not have countervailing procompetitive effects on this market: while many—indeed most— agents cannot join Top Agent Network, the Policy does not increase those agents' choice of listing services. Moreover, as *PLS.com* noted, it would be inappropriate at this stage in the case to compare the Policy's anticompetitive and procompetitive effects. *See id.* at 839.

Nor can the dismissal order be sustained on the basis that Top Agent Network's own potentially anticompetitive conduct prevents it from establishing antitrust standing. A "plaintiff's illegal conduct cannot be raised as a complete bar to his antitrust action." *First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1164, 1174 (9th Cir. 1980).

As counsel for Top Agent Network agreed at the hearing and in the motion, this is not to

say that the plausibly anticompetitive nature of Top Agent Network's business model will necessarily be irrelevant at later stages in the case. Although Top Agent Network has adequately alleged a per se group boycott in its complaint, it remains to be seen whether a per se or rule of reason analysis should apply at later stages of this litigation. *See PLS.com*, 32 F.4th at 837. It may be that the National Association of Realtors can eventually justify the Policy (at least as applied to exclusive listing services) with "plausible arguments that [it was] intended to enhance overall efficiency and make markets more competitive," in which case the rule of reason could apply. *Id.* at 835. And if that happens, then under the rule of reason—which "requires courts to conduct a fact-specific assessment of market power and market structure" to "assess the restraint's actual effect on competition"—it may be that the Policy's net effect is procompetitive, not anticompetitive. *Id.* at 834 (quoting *Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018)).

Because Top Agent Network has adequately alleged that the Policy is a group boycott in violation of the Sherman Act—and that it has been injured by that injury to competition—the motion for reconsideration is granted and Top Agent Network's Sherman Act claim can proceed. Because plaintiffs bringing claims under the Cartwright Act must meet the same antitrust injury requirement as under the Sherman Act, Top Agent Network's Cartwright Act claim can also proceed. And because Top Agent Network has stated claims for violation of the Sherman Act and Cartwright Act, its UCL claim can also proceed. The dismissal of Top Agent Network's intentional interference with contractual relations claim, however, is unaffected by this order's analysis.

Discovery may proceed immediately. A case management conference is scheduled for August 30, 2024 at 10:00 a.m., with a joint case management statement due August 23.

**IT IS SO ORDERED.**

Dated: July 22, 2024

VINCE CHHABRIA
United States District Judge